May it please the Court, I'm Robert Jobe and I'm appearing today on behalf of the petitioner, Frida Kasnecovic. At the outset, I need to acknowledge that we've not been entirely consistent in what we've been asking this Court to do. Although we have consistently maintained that the Court has to remand this case to the Board, we've changed our position about when such a remand must occur. I want to address that timing question, but I first want to address this Court's decision in San Pedro v. Ashcroft, which seems to me to be critical to this case. And although I recognize this panel is bound by San Pedro, I want to point out that yesterday we did file a petition for re-hearing on that case with a suggestion for re-hearing on Bach. Let me suggest something to you which maybe eliminates the whole issue of the timeliness. The BIA affirmed the whole immigration judge's decision. And that, in part, would be the denial of withholding and the CAT, which would not be subject to any timeliness argument, isn't that correct? So don't we have to turn to the whole argument of whether the thing was credible and whether the burden had shifted to the government to show that if there was persecution, that circumstances had changed and so forth? Isn't that really where the case is at, not really on whether we can review timeliness or not? I don't think so. You don't think so? I think, as we indicated in our reply brief, I think there are two ways the Court could approach this. It could go ahead and adjudicate, review the credibility determination, and if it rejects that credibility determination, remand, and then the Board would have the benefit of that decision, this Court's decision, in reassessing the asylum. I think the case has to go back on the asylum question, ultimately, because we don't know. Well, if we were to review, I think what Judge Fletcher is asking is this. On what basis could we avoid deciding the withholding question when that question is not subject to the timeliness issue? It was decided by the IJ. It was therefore necessarily decided by the Board. Right. And it seems to entail the same credibility determinations. Right. So what would be the logic of saying we're going to first send it back to the Board on the asylum question, or to decide in something similar to what the First Circuit and Fifth Circuits did, whether this was, in fact, a timeliness or a merits decision? Because whatever it was on the asylum, we know that on the withholding it was a merits decision. Right. The same was true in Zhu and in Haoud. It was true. Well, I don't know about in Haoud. It was true in Zhu, but I'm not sure that was a convincing way to deal with that. Yeah. I mean, I think it's important. First off, I want to make clear why I think it's important that we remand to begin with, and then I want to deal with the timing question. With regard to the asylum, we don't know why the asylum was denied. We don't know why the Board summarily affirmed the IJ's denial of asylum. But that is no different than any other case, right? In other words, if we didn't have this timeliness issue in the case, it would be like any other asylum case in which there was a credibility determination, an adverse credibility determination by the IJ, and no alternative merits ruling. Right. In any of those cases under streamlining, it could be that the BIA really decided that the person was credible, but that there was still no persecution, possibly. Right. That's true. And at least, well, I can imagine an argument that we should remand in any of those circumstances. That certainly isn't what this Court's been doing. Right. I think this is different from the average case, because in the average case, the case we more commonly see, the reasons that are set forth by the immigration judge are all reviewable. So in a case like that, if the Board of Immigration Appeals summarily affirms, there's no possibility that the alien is going to be wrongfully deprived of his or her right to judicial review. But here we have a situation where the alien could be deprived of her right to judicial review, because the immigration judge is offering both a non-reviewable and a reviewable ground. Right. And when the board affirmed, it just affirmed the result, not the reasoning. So we don't know whether the board affirmed on a reviewable ground or not. But we know on the withholding that it had to have affirmed on the merits. We actually don't know that at all. We know that it affirmed on the merits, but we don't know that it affirmed on the credibility question. It's entirely possible in this case that the board rejected the immigration judge's conclusion with regard to the one-year rule. It's entirely possible that they rejected the immigration judge's conclusions on credibility and affirmed on an altogether different ground. For example, finding that conditions in Kosovo have changed to such a degree that it's now safe for her to return. We don't know. And that's one of the reasons I think it's important to remand this decision now. When we're in a situation where it's possible, we have somebody who's applying for asylum, and there's the possibility that she's going to be wrongfully deprived of judicial review on the asylum claim because of these summary affirmance procedures. Well, if we were looking at the withholding claim, we would go back and look at the asylum claim, and if we disagreed on the question of credibility and thought that she was credible and that she was persecuted, then we would probably remand for the government to have an opportunity to show that there were changed circumstances. So that would be a remand. So why is she denied review? Because in looking at the withholding, we're certainly going to have to go back and look at the credibility, which was the basis for denying the withholding. Are you asking us not to decide the withholding or to decide it? That's what I'm saying, yes. At this point, our position is I don't think you should decide the withholding, I don't think you should look at the credibility question. And the reason is, just as the First Circuit did and the Fifth Circuit did, I think the appropriate thing to do in this situation where there's a possibility that an individual is going to be deprived of a right to judicial review over an asylum denial, remand it to the board so that the board issues a written opinion. The benefit of that is, again, we don't know really whether the board affirmed the immigration judge's ruling on that credibility decision. And if this is going back to the board anyway or there's a good chance it's going back to the board, we should do it now. It's only going back to the board if you win on the credibility issue. Well, my point is I don't think you should even look to the credibility question yet, because we don't know, in fact, whether that's a basis for the board's decision. The board simply summarily affirmed the result. Wasn't there a concession that it was not timely? No. The concession, Your Honor, I believe is that this Court has no jurisdiction to review on that question. There wasn't a concession. But on the other hand, there was never any argument that it wasn't timely, is there? Is there any argument that it wasn't timely? Oh, yes, of course. Absolutely. And where is that argument? There's an ineffective assistance of counsel issue here, because, I mean, clearly she retained Catholic services within six months of her arrival here in the United States. She had a lawyer working on the case. The lawyer advised her to file for TPS and never advised her to apply for asylum within the one-year period.  Pardon me, Your Honor? Is there any argument that TPS stays? Yes. If she had been granted TPS. In the regulations, there's a provision that says that if you're in lawful status, immigrant or nonimmigrant status, then that's an extraordinary circumstance, which essentially tolls the one-year period. I see. And then once your lawful status expires, you have to apply within a reasonable period of time. They were basically assuming she was going to get the TPS, but she didn't. Yes. On the other hand, there's an argument that the mere filing of the application may have tolled her status. I mean, there are a number of arguments that I think she's put forth in the record on the one-year rule. Where did she put these forth? In her testimony. I mean, she was asked whether her lawyer ever advised her to file for an application for asylum. She said no. She testified that she met with Catholic Services Act early on, you know, within six months of her arrival here. I mean, the facts are there to make a very strong one-year argument. And so I think there's a ‑‑ like the First Circuit and the Fifth Circuit case, I really believe this is a situation where the individual could be deprived of judicial review over the asylum claim. And the reason I think it's appropriate to remand now is because if it's remanded at any point, the board is not going to be able to summarily affirm. It's going to have to write a written opinion. And when it does that, it will have to make its reasons clear as to why it's sustaining the immigration judge's decision. And it may well be the case that it's sustaining the immigration judge's decision on grounds other than the credibility determination. And it doesn't make sense if the board is eventually going to tell us that that wasn't the reason. And I said this before, but what I'm having ‑‑ where I'm getting stuck is that argument applies in any asylum case, which turned ‑‑ in which the IJA's opinion was credibility. Precisely. And what's special about this case is that we have a reviewable and unreviewable ground. And I'm not seeing the connection between the existence of a reviewable and unreviewable ground and the fact that of this whole opaqueness of the streamlining procedure in general. This is a special species of opaqueness which this Court hasn't directly addressed, but which two circuits have held does lead to a remand. Right. Generally, the opaqueness hasn't led to a remand. And I agree with what you're saying on that point. That is true of, I guess, all streamlining cases. But in my view, that goes not to whether you need to remand, but what the timing of the remand should be. I think you have to remand, as the First Circuit and the Fifth Circuit did, because this Court is obliged to protect its jurisdiction, the jurisdiction that Congress conferred upon it in the asylum context. And you don't know in this situation whether the streamlining regulations are usurping your jurisdiction or not. And you have to remand in order to get a determination to know whether the streamlining regulations are usurping your jurisdiction. Do you want us to be putting this on hold while you complete the petition for review in San Pedro? I think that makes a lot of sense. I also think that this is distinguishable from San Pedro, because this case is an asylum claim. And I think the statutory scheme evinces a particular concern on the part of Congress with judicial review and preserving judicial review in asylum cases. And the statutory provision that I would point to is AUSC 1252A2B2. What were the circumstances in San Pedro? There were different – there were connected issues in the way that this isn't, right? I can't really distinguish that case except by virtue of the differing relief. I mean, in San Pedro, you had an individual in removal proceedings that was applying for a waiver of removability under 237A1H, AUSC 1227A1H. It's a waiver for individuals who have entered the country by fraud. And in that case, the immigration judge initially found that the individual was ineligible as a matter of law, statutory ineligible, but then went on to rule in the alternative that even if he were statutorily eligible, he's undeserving of a favorable exercise of discretion. And second, is it not reviewable in the first case? The first question would have been reviewable, and the second question about discretion is not reviewable. The Board summarily affirms. Ninth Circuit then dismisses for lack of jurisdiction. It's a very similar case, except that here the relief is asylum. And again, I think that the statutory scheme evinces a real ñ a greater concern on the part of Congress that the Court protect jurisdiction over asylum applications. I mean, under 1252A2B, this Court is ñ its jurisdiction over any discretionary determination is eliminated, except asylum, except asylum. That, to me, is a message from Congress that the Court ñ that Congress wants the Court involved in these asylum cases. It's a particular ñ Congress is particularly emphasizing that. In addition, I think there are heightened due process concerns that come into play whenever we're dealing with asylum. In a case like this, we're not just dealing with somebody who's going to lose a long-term residence here in the United States, as we were in San Pedro. We're dealing with somebody who, in addition to that, may be facing literally death or torture. And for that reason, I think there are constitutional concerns that also counsel in favor of re-landing to make sure that this Court protects its jurisdiction. And then finally, I think there's an issue of judicial ñ But what do you ñ I'm still stuck on the fact that we ñ do you agree that we ñ that withholding issue is before us? I think the ñ It's been decided. I think the ñ you could decide the withholding issue. I do believe that you could decide it. We have jurisdiction over it. It's been decided by the BIA, and we have jurisdiction over it. I think you could exercise jurisdiction over it. I think the better course of action in this case is to re-land at the outset, as the First and the Fifth Circuit did. That way, we get a written decision from the Board that makes clear the Board's thinking about the case, because, again, we don't know whether the Board even agreed with that negative credibility finding. And if the Board's going to issue a written opinion at some point, it may as well do it now so that this Court doesn't waste its time looking at a credibility determination that the Board may not even agree with. I wanted to ask you one more question about San Pedro. Did the I.J. even have the record to say, on the basis of discretion, I wouldn't grant it? Isn't that a separate thing that happens later after they go up and find out whether their original position is granted or whether they're found eligible or not? My reading of the case, Your Honor, is that the Board conducted an evident or the immigration judge conducted an evidentiary hearing on the application and then simply ruled in the alternative, first saying, I find you statutorily ineligible, but even if you are eligible, I would deny it in the exercise of discretion. Thank you, and we'll give you a minute of rebuttal. May it please the Court. John Hogan again for the Attorney General. I think one thing is clear, that the I.J.'s holding denying asylum is untimely was not challenged to the Board.  Couldn't be challenged to the Board. The Petitioner did not raise it in her notice of appeal to the Board, the one year asylum. I thought it was not allowed to do that. To the Board, yes. This Court, no, Your Honor. The one year. Oh, I see. I see. Go ahead. So that was not challenged in the notice of appeal. It was not briefed to the Board. It was conceded in the opening brief in this case in a footnote that the one year, there is no reason. I didn't think so, by the way. I looked at that, and I did not think that that was a fair characterization. I don't know about what was done before the Board. Well, at least we know there's no argument anywhere that the one year bar was somehow in error anywhere. We don't have that. And I provided to the court clerk before the argument a case just decided yesterday by this court, the Zara case. And that held that even in an affirmance without opinion case, the exhaustion requirement still applies. I have to cite 2004 Westlaw 1965046. So I think that exhaustion requirement applies. And it didn't happen in this case. But I think the real key is what the Attorney General would argue in this case is just what the Eighth Circuit said in the McGeer case, is jump over the Board and go right to the immigration judge.  You know, I've been puzzling about this whole streamlining thing now for months. And I don't ‑‑ it seems to me that the Attorney General had various options. Or maybe there were statutory reasons he could have done this. But he could have created a certain kind of process, saying that the BIA will only hear certain cases. They didn't do that. They could have done something like what was done before, i.e., we affirm for the reasons stated by the IJ. He didn't do that. So this is an affirmance. There is a separate decision. And you're not telling us what it is. And if you come and ‑‑ because you decide that we ought to be reviewing something that is not the decision of the BIA or the Attorney General doesn't mean that we have to do that. I think, Your Honor, that's what the Eighth Circuit addressed when they said it's the decision of the agency, the immigration judge, which is important. But it isn't the decision of the agency because the BIA did make a decision. It did not make a decision. It wasn't. It's not like a cert process. It affirmed. It made a decision. But it's not telling us why. Right. And the Eighth Circuit addressed that saying, Your Honor, that we don't have to worry about whether the reviewing court can discern the reasoning of the law. But that is completely contrary to 50 years of administrative law, Chenery and everything else. I think because, Your Honor, the safeguard here is that you do have a well‑written 19‑page opinion from the immigration judge. But it's not necessarily what the BIA, who made the decision, thought. Your Honor, but that's what the streamlining regulation allows. What we argued in our letter brief is asking for more isn't allowed by the regulation. The regulation says that ‑‑ But the regulation may not bind us because it isn't necessarily so that you can tell us who to review. When you have a decision that is made by an agency and it's a relationship between an agency and a court, you have a decision, the BIA has made a decision, but it doesn't choose to tell us why. I think, well, Your Honor, I think court precedent says that this court will look at the IJ's decision. I understand that. But it also says that that's true in most instances. But where, for example, there is a discretionary, at least Falcon Creech has said, that it might be otherwise if there were a reviewable and a nonreviewable decision, specifically because of the anomaly that creates. So to answer that by saying, oh, but you have a decision, which is the IJ decision, doesn't seem to answer it. I think it does, Your Honor, for the reason of it's almost what you were mentioning earlier about the different ways the IJ can make a decision and what the board will do with that. It's almost as if in this case you took the IJ's letterhead off and put, or the BIA's letterhead off and put the IJ's letterhead on. You still have the well‑reasoned decision to review in this case. And if there's alternative grounds and the one grounds this court doesn't have jurisdiction to review, then the court has the other grounds of the IJ's decision to look at, which is the withholding and the Convention Against Torture claim in this case, especially when the one‑year bar is delayed. But the only thing we know from the agency is that they decided that any determination by the IJ was harmless because it didn't result in a distinction. And that it meant, obviously, it meant the other. For the streamline, we would assume that the board felt that it met all the requirements, where it says that they shall streamline if the requirements are met. So that's what we argue, Your Honor, that we don't have to worry about the exact internal reasoning like the Eighth Circuit. Let's go to a different question, which is the one Judge Fletcher originally raised, which is suppose that ‑‑ do we have the withholding issue before us in any event? Yes, Your Honor. Because that's not barred by ‑‑ Suppose we thought that the ZHU decision and the Howell decision were correct and we would otherwise be inclined to remand for a determination of the timeliness issue. They had the same circumstance, or at least ZHU did, with regard to the withholding, and they still remanded. Why shouldn't we do that as well? Right. I think, and that's where we argue, that's putting then the, as we call it, the articulation requirement on a streamline decision, asking the board now to explain all its reasons when the streamline regulation ‑‑ I'm saying something else. Listen to me. Sure. Let's assume that we thought that ZHU and Howell were right as to the fact that when, if there was just an asylum decision, that there is an articulation requirement. But still there's also a withholding decision as to which there is no timeliness problem and we definitely have jurisdiction. Nonetheless, in both Howell and ZHU, they remanded. Why shouldn't we do that too? Or should we do that too? But if I'm getting the scenario right, then ZHU, Your Honor, have the one‑year scenario as well. I think the simple answer is, Your Honor, you shouldn't remand on the asylum issue because you don't have jurisdiction to review that part. You can look then right to the withholding, which encompasses, of course, the credibility determination. And then, as the judge said, even if basically you were credible, look at the conditions back in Kosovo or Montenegro, you don't have a wealth in the alternative. Excuse me, not the alternative. You do not have a clear probability of persecution back in either place. So I think the court can dispose of all the issues before remand is needed in this case. One, as we argued, for lack of jurisdiction. And two, you can look at the withholding and CAC claim, the merits of it at least, to figure out whether the judge was right in this case. You agree that if we found the petitioner credible and found that she had been persecuted, then the burden would shift to the government, would it not, to show that conditions were now changed? Yes, Your Honor. And I think in the record it's clear whether it's Kosovo or Montenegro, both in the record. And for Montenegro, I'm specifically talking about pages 250 to 253 in the record. In Kosovo, 230 to roughly 238. Both talk about, okay, it's not ideal, but in Kosovo we have religious freedom and that there's no political persecution or prisoners. In Montenegro, the same thing. It even talks about how Muslims, Christians, and Orthodox share the same municipal buildings to do their services even. So that kind of cuts against her claim that even if she was credible, she has a clear probability that she's going to be persecuted if she's going to be sent back. So I think it's the court can get to that and not have to remand to get to the issues of the withholding for any kind of more, as we call it, articulation as to what was going on. Well, what evidence did the government put in as to changed conditions? Your Honor, it was the State Department reports detailed how from when she left, whether you take the version of Kosovo or Montenegro, what was going on. So we have the State Department report in the pages I mentioned, Your Honor. I just think, Your Honor, as I guess I obviously have opposing views on this, I just think a remand in this case, you could only get to that if, I think, you reversed as to looking at the withholding that the credibility determination was somehow an error. But as far as the asylum, we have one, a waiver, a failure to exhaust, and a jurisdiction bar throughout the whole asylum application, leaving this Court only with the withholding and cataclysm. And the failure to exhaust, you think, is on the one-year? The timeliness question. Yes, Your Honor. And that's the case that I provide the clerk from yesterday. What do you want to address the credibility issue on the merits? Your Honor, we believe that substantial evidence supports the judge's holding on that. Some of the issues that the petitioners raised might support a different finding, but it doesn't compel a different finding in this case, because if you look at her, we have a temporary protective status application, two asylum applications, a testimony, and the original time she comes across the border, and we go from Montenegro, Kosovo, Kosovo, Montenegro, Montenegro, as to where she was born. It's constantly changing. And then we look at as to she says how long she was detained in different applications and what she testifies to is different. So I think substantial evidence supports that when you split out all the different times she either had an application put in or her own verbal testimony at the immigration hearing. So I think that's supported. And you can look at that because you can look at the withholding claim when you get to that credibility. And that's why we don't think there's any reason to remand now when the you can get to that withholding issue. We actually do affirm the decision of the board, of the immigration judge. Thank you very much. Thank you. Mr. Jobe, do you want to butt off for a minute or two? First, on the issue of waiver, that's just not true. The brief that was filed at the board has three pages arguing that the immigration judge's ruling on the one-year issue was simply incorrect. It's on pages 18 through 20 of the administrative record. With regard to the Eighth Circuit decision in Guri, obviously that decision shouldn't be filed in the Eighth Circuit because that decision rests on the conclusion that the summary affirmance, the board's decision to summarily affirm is not judicially reviewable at all. And this court rejected that position in Falcón-Carriche and more recently in Chen. Finally, I want to give you an example of why I think remand at the outset is more appropriate in terms of judicial economy. And I'm thinking about a case where the board, the immigration judge denies asylum based on the one-year rule and then rules in the alternative didn't establish a well-founded fear. And then rules also that the person's not eligible for withholding because he didn't meet the higher requirement, clear probability of harm. Then the case is summarily affirmed by the board that comes up to the Ninth Circuit. If this court were to review the withholding claim and agree with the board, it would sustain the board's decision on withholding. And then what would happen is the alien would seek review in habeas corpus on the issue of the one-year rule. Because although that question's not reviewable before this court, it seems to be reviewable in habeas. There's one district court that's held that, no district court that's said to the contrary. At least where the issue with regard to the one-year rule is the application of law to undisputed facts. Yes, but your hypothetical was that we affirm or we don't affirm on the credibility determination. In my hypothetical, there is no credibility issue. In my hypothetical, you have a situation where the immigration judge rejected the asylum on the one-year rule, found that the person had failed to establish a well-founded fear or a clear probability. And so when the issue comes up to the court, all you're going to be able to review presumably would be the withholding claim. And let's say you agree with that. At that point, because we don't know, that's not going to resolve the asylum claim. Then why not? Well, because the asylum claim obviously has a lower burden. It's possible. It's got a lower burden as to credibility. No, I'm assuming that the person's credible. Oh, okay. This is just an example. The person's credible. That would be true, but it's not this case. No, it's not. But this is an example of why it's appropriate to remand at the outset. I think it should basically be the same for all these cases. It would be appropriate to remand at the outset, but what about in this case? Well, in this case, I think there are very good reasons to do it as well. And, again, as I said, we don't know whether the board even agreed with the credibility finding that the court wants to review. And I don't see any reason for this court, unless it absolutely has to, to review a credibility finding that the board may well have rejected if there's a reason to remand it to the board anyway. Unless there are any further questions, Your Honor. No, thank you. Thank you very much. Thank you. Thank you, counsel. The case of Kasichovich v. Ashcroft is submitted, and we are in adjournment. Thank you very much. Thank you, Your Honor. Fort Collins police say there was no signs of sexual assault or trauma to Stady's body. Investigators are now trying to piece together the last hours of Stady's life and trying to determine if anyone was responsible for providing her with alcohol. The L. Marquez, CNN, Los Angeles. What is your name? This court is adjourned. Thank you, Your Honor.
judges: B. Fletcher, Leavy, Berzon